IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

GLEN D. WINDHAM                                    PLAINTIFF

VERSUS                       CIVIL ACTION NO. 5:04cv262-DCB-JCS

CARDINAL HEALTH, INC., CARDINAL
HEALTH STAFFING SERVICES, SHARON
CONEY, individually, AND RACHEL
LOWERY, individually                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 19**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS

Cardinal Health[1] is a staffing service that provides, *inter alia*, temporary pharmacy staffing services to the health care industry. The plaintiff, Glenn Windham ("Windham"), was hired by Cardinal Health on September 9, 2002, to work as a Staff Pharmacist in the inpatient pharmacy at River Region Medical Center ("River Region") in Vicksburg, Mississippi. Rachel Lowery ("Lowery"), then Director of Pharmacy, supervised Windham. The plaintiff was fifty-two (52) years old at the time of his hire. Though Windham had worked for over seventeen years as a retail pharmacist, he lacked

---

[1] This opinion will refer to Cardinal Health, Inc. and Cardinal Staffing Services collectively as "Cardinal Health".

experience working in a hospital setting. He was hired by Cardinal and Lowery with the expectation that with adequate training he would quickly learn hospital pharmacy practice.

The defendants contend that shortly after Windham's hiring, they noticed numerous problems related to the plaintiff's substandard performance and lack of interpersonal skills. See Def. Motion for Summ. Judgment, at 2. Cardinal claims that despite the valiant efforts it made to train Windham he was unable to become proficient in the new area of practice. Such training, according to the defendants, included pairing Windham with Anne Perrier, an experienced pharmacist, for a number of months and delivering formal coaching sessions to the plaintiff. Moreover, the defendants claim that Windham lost his temper on a number of occasions and yelled at a co-worker and Lowery without justification.

Windham, however, claims that Lowery refused to provide him adequate training and actively sabotaged his success by instructing his co-workers not to aid him. See Pl. Memo. in Response to Def. Motion for Summ. Judgment, at 3. In addition to his claim that Cardinal refused to properly train him, Windham maintains that two of his co-workers, Sharon Coney ("Coney") and John Johnson ("Johnson") continually verbally harassed him on the basis of his age. He claims that Coney and Johnson had called him "old" and had insulted him by telling him he was an "old fuck-up" and an "old

fart". He also claims that his co-workers would constantly tell him that he was flatulent and that he was consequently malodorous. Moreover, the plaintiff asserts that his supervisor, Coney, not only knew of and acquiesced in this harassment by his co-workers, but also that she encouraged it and even actively participated in haranguing Windham by calling him "stupid".

Windham states that he complained about this harassment to Dr. Hopson, the Chief of Staff at River Region. Afterwards, he maintains that not only was Dr. Hopson unable to remedy the situation, but the harassment became much worse after Lowery discovered that he had reported the conduct.

On November 21, 2003, Windham resigned from Cardinal Health, delivering a resignation letter to Lowery in which he attributed the cause of his resignation to the continued lack of training promised to him, the inappropriate statements made to him by his co-workers and an incident where Coney and Johnson illicitly watched him through the hospital security cameras.

After filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and receiving his Notice of Right to Sue, Windham filed the current complaint in this Court on September 27, 2004, alleging numerous violations of both federal and state law. His complaint includes a number of federal claims against Cardinal Health, as an employing entity, and Lowery and Coney as individuals. Windham alleges violations of Title VII and

the Age Discrimination in Employment Act ("ADEA"), claiming that he was subjected to a hostile environment on the basis of age and gender, that he was retaliated against for exercising his statutory rights and that he was constructively discharged.  The plaintiff also includes federal conspiracy charges under 42 U.S.C. §§ 1985(3) and 1986 in his complaint.  Additionally, Windham alleges a number of state law claims against the defendants, including breach of contract/tortious interference with a contract, intentional infliction of emotional distress, invasion of privacy and civil conspiracy.  The defendants filed the subject Motion for Summary Judgment on September 9, 2005, and the issues raised therein have been fully briefed by both sides.

**DISCUSSION**

**I.  Standard for Summary Judgment**

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the

-4-

case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists.  Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation."  Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).  The non-movant must "designate specific facts showing the existence of a genuine issue for trial."  Anderson, 477 U.S. at 250.  "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Id. at 252.  Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law.  When

deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. Windham's Title VII and ADEA Claims

Title VII, 42 U.S.C. § 2000(e)(2)(a)(1), makes it unlawful for any employer "to fail or refuse to hire or discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." The ADEA similarly proscribes discrimination on the basis of age, prohibiting prejudicial treatment against persons over the age of forty (40). See 29

U.S.C. §§ 623(a) and 631.   For the most part, Windham's Title VII and ADEA claims may be analyzed together inasmuch as "[t]he same evidentiary procedure for allocating burdens applies to discrimination claims under both statutes."   Meinecke v. H & R Block, 66 F.3d 77, 83 (5th Cir. 1995).

It is agreed by both sides that the plaintiff's claim should be analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   Under that framework, Windham may establish a prima facie case of discrimination by showing that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals who were outside the protected class.   Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998).   If Windham is able to put forth a prima facie case,[2] then a presumption of discrimination arises and the burden shifts to the defendants to articulate a legitimate non-discriminatory reason for the adverse employment action.   Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).   If such a reason is put forth, then the presumption of discrimination

---

[2] For purposes of resolving this Motion for Summary Judgment, it is undisputed that the plaintiff is a member of a protected class under Title VII and the ADEA and that he was qualified for the position.   Primarily, the defendants contend that Windham did not suffer an adverse employment action, or even if he did, such action was not taken because of his membership in one of those protected groups.

is defeated and Windham is left with the ultimate burden of proving that the defendants' stated reason for the employment action is pretextual.  Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002).

To properly analyze Windham's claims of discrimination under Title VII and the ADEA, this Court will separate those claims into three distinct theories of liability.  First, Windham claims that Lowery and his co-workers subjected him to a hostile environment based upon age and gender discrimination.  Second, the plaintiff submits that he was constructively discharged from his employment on the basis of age and gender discrimination.  Third, it is further contended by the plaintiff that he was retaliated against for reporting harassing conduct in violation of Title VII and the ADEA.  Each such theory of liability shall be addressed independently.

A.  Hostile Work Environment Under Title VII and the ADEA

A plaintiff may establish a violation of Title VII by proving that discrimination based upon sex has created a hostile or abusive working environment.  Meritor Sav. Bank FSB v. Vinson, 477 U.S. 66 (1986).  The Fifth Circuit has not yet ruled that a hostile environment claim is available under the ADEA; however, district courts within this circuit had held such a claim to be viable and analyzed them under the traditional Title VII framework.  See McNealy v. Emerson Elec. Co., 121 Fed. Appx. 29, at *4 n.1 (5th

Cir. 2005) (assuming, without deciding, that the ADEA allows for a hostile environment claim); Steele v. Atrium Cos., Inc., No. 3:01cv1125, 2002 WL 31059823, at *5 (N.D. Tex. 2002) (assuming that a hostile environment claim under the ADEA exists by looking to other circuits' precedent). This Court will also assume that a hostile environment claim under the ADEA is available to Windham, provided that he is able to establish the necessary elements.

In order to establish a hostile work environment the plaintiff must prove the following elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome harassment; (3) the harassment complained of was based upon the employee's protected class; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) the employer knew or should have known fo the harassment and failed to take prompt remedial action. Shepherd v. Comptroller of Public Accounts to the State of Tex., 168 F.3d 871, 873 (5th Cir. 1999).

In regard to the plaintiff's ADEA claim, the defendants contend that Windham is unable to demonstrate that he was discriminated against on the basis of his gender inasmuch as he has failed to identify any causal connection between the alleged harassment and his sex. Instead, according to the defendants, Windham claims "in a conclusory fashion that because he is a male 'it's easier to call him harsh things and him take it.'" Def. Motion for Summ. Judgment, at 9 (quoting Windham's deposition at

79, 81).   The plaintiff fails to offer any argument in direct response to this contention.   <u>See</u> Pl. Response to Def. Motion for Summ. Judgment, at 4-5.   A review of the pleadings yields only one possible connection between Windham's gender and his alleged discriminatory treatment: his claim that Coney, his female co-worker, was treated favorably by Lowery in that Coney was given time off when she requested it but similar requests by Windham were often challenged by Lowery.   <u>See, e.g.</u>, Affidavit of Cameron L. Mayer (stating that he witnessed several occasions where Ms. Coney was given time off, but that Lowery often gave Windham a hard time when he made similar requests).   Where preferential treatment is given to an employee <u>because</u> of his or her gender, Title VII may be implicated.   <u>See</u> <u>Johnson v. Trans. Agency</u>, 480 U.S. 616 (1987).   Windham's proof of a causal connection between the hostile conduct and his gender appears weak; however, at this stage of the litigation, the Court will not rule that, as a matter of law, he will be unable to prove this claim at trial.

*Can Windham demonstrate that the complained-of conduct was sufficiently severe or pervasive to establish a violation of Title VII or the ADEA?*

In regard to the fourth element, that the alleged harassment affected a term, condition or privilege of employment, the defendants claim that the conduct complained of by Windham, even if it actually occurred, would not be severe or pervasive enough to violate either Title VII or the ADEA.   For harassment to be

-10-

actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an environment that a reasonable person would find hostile or abusive." Meritor Savs. Bank, 477 U.S. at 67. "Incidental or occasional age-based comments, discourtesy, rudeness or isolated incidents . . . are not discriminatory changes in the terms and conditions of a worker's employment." Lacher v. West, 147 F. Supp. 2d 538, 544 (N.D. Tex. 2001).

The defendants maintain that there is no evidence in the record showing that the comments made to Windham were anything more than isolated incidents of simple teasing and offhanded remarks. The plaintiff, however, paints a different picture of the alleged harassment. While the defendants claim that the comments were only "isolated", Windham contends that they were actually "continuous and were so severe, pervasive and abusive" that he could not effectively perform his job. Pl. Response to Def. Motion for Summ. Judgment, at 4-5. He supports this claim with not only his own affidavit and deposition testimony, but also with an affidavit from two of his former co-workers, Ingrid Moses and Cameron Mayer. Ms. Moses testifies that "Rachel Lowery, Sharon Coney, and John Johnson made derogatory comments about Mr. Windham on practically a daily basis. . . . I would hear these derogatory and negative comments at all times when I was working my shift." Affidavit of Ingrid Moses, at ¶¶ 1, 8 (emphasis added). She further states that "Mr. Windham

-11-

would be 'ridiculed' over any error that he made on a continuing basis . . . ."   Affidavit of Ingrid Moses, at ¶3.   Similar allegations were made by Cameron Mayer in his affidavit.[3]   Although the defendants claim that the majority of the offensive comments made about Windham, if they were made at all, occurred outside of his presence, the affiants contend that Windham was the constant subject of a barrage of harassing and insulting language both in and outside of his presence.

If Ms. Moses' and Mr. Mayer's allegations are true, then the incessant taunting and deliberate indifference to Windham's

---

[3] The defendants contend that this Court should not consider the affidavits submitted from Ms. Moses and Mr. Mayer because they fail to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.   Under Fed. R. Civ. Proc. 56(e), all "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence . . . ."   The defendants submit that the majority of the affiants' statements in their affidavits are hearsay and/or are not based upon personal knowledge.   See Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor [the Fifth Circuit] may properly consider hearsay evidence in affidavits . . . .").

"'Hearsay' is a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c) (emphasis added).   It is clear that the affidavits submitted by the plaintiff are not hearsay inasmuch as they are not offered to prove the truth of the matter asserted, i.e., that the disparaging remarks allegedly made about Windham's age, intelligence and olfactory offensiveness were accurate.   Ms. Moses and Mr. Mayer testified, primarily, as to Coney's and Lowery's comments about and their treatment of the plaintiff.   None of their recollections as to what Coney and Lowery said are offered to prove that the content of those statements are true.   Furthermore, both affiants testified in their affidavits that their declarations were based from personal knowledge.   The affidavits may, therefore, be properly considered by this Court under Rule 56(e).

training requirements may give rise to liability. While "Title VII is not a guardian of taste"[4] and isolated acts of discourtesy or rudeness do not amount to actionable discrimination, the plaintiff has presented enough evidence of pervasiveness to overcome the defendants' motion for summary judgment on this issue.

B. Constructive Discharge

As mentioned previously, Windham was not discharged from his position with Cardinal Health; rather, he purportedly felt compelled to resign because of the lack of training and constant harassment that he suffered. "A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge." Brown v. Kinney Shoe Corp., 237 F.3d 556, 565 (5th Cir. 2001). Constructive discharge may be shown where the plaintiff has established that "working conditions were so intolerable that a reasonable employee would feel compelled to resign." Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997). The Fifth Circuit Court of Appeals has identified the following seven factors as relevant in determining whether a reasonable employee would feel compelled to quit his or her job:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger

---

[4] Mims v. Carrier Corp., 88 F. Supp. 2d 706, 716 (E.D. Tex. 2000).

>           supervisor;  (6)  badgering,  harassment,  or
>           humiliation  by  the  employer  calculated  to
>           encourage  the  employee's  resignation;  or  (7)
>           offers  of  early  retirement  .  .  .

Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000) (internal

quotation omitted).  "Constructive discharge requires a greater

degree of harassment than that required by a hostile environment

claim."  Brown, 237 F.3d at 566 (citing Boze v. Branstetter, 912

F.2d 801, 805 (5th Cir. 1990); Landgraf v. USI Film Prods., 968

F.2d 427, 429-30 (5th Cir. 1992)).

     Again, the defendants contend that because Windham was only

subjected to, at the most, "simple teasing and rude remarks" no

reasonable person in his position would have felt compelled to

resign.  Def. Motion for Summ. Judgment, at 12.  As already stated,

Windham has submitted enough evidence to refute that contention.

Moreover, the plaintiff claims include allegations that Lowery

instructed other employees at the pharmacy to not help the

plaintiff and that she refused to offer him proper training for his

position.  Because Windham has put forth enough evidence that he

suffered consistent badgering, harassment and humiliation this

Court cannot find that, as a matter of law, his claims cannot be

proven at trial.

C.  Retaliation Claim Under Title VII and the ADEA

     A prima facie claim of retaliation may be established under

Title VII or the ADEA by proving that: (1) the plaintiff engaged in

a statutorily protected activity; (2) was subsequently subjected to

an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. See Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999) (Title VII); Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998) (ADEA).

Windham claims that he was retaliated against by Lowery and his co-workers for reporting their harassment to the hospital's Chief of Staff.  He asserts that their ridicule and ostracism of him became much more severe once they discovered that he had reported their conduct.  The defendants contend, however, that the plaintiff's retaliation claim must fail as a matter of law because he cannot produce sufficient evidence to demonstrate that he suffered an adverse employment action.  See Def. Motion for Summ. Judgment, at 16.

The Fifth Circuit is among a minority of the circuits which hold that the creation of a hostile work environment in response to protected statutory speech under Title VII or the ADEA does not constitute an adverse employment action to support a retaliation claim.  Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997).  Instead, there must be some "ultimate" employment action, such as termination, failure to hire or failure to promote.  See Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 532 n.2 (5th Cir. 2003) (stating that ostracism by co-workers, loss of some job duties, formal discipline, verbal reprimands and threats of

termination do not constitute ultimate employment actions); <u>Messer v. Meno</u>, 130 F.3d 130, 140 (5th Cir. 1997) (holding that monitoring of employee's conversations and criticism of work and conduct are not ultimate employment decisions).  An employee's constructive discharge, however, <u>is</u> an ultimate employment action.  <u>See</u> <u>Harvill v. Westward Communications, LLC</u>, --- F.3d ----, 2005 WL 3388571, at *9 (5th Cir. 2005).  At this stage of the litigation Windham has produced enough evidence to maintain his constructive discharge claim; therefore, his retaliation claim also remains viable.

<u>D.  Individual Liability Under Title VII and the ADEA</u>

Despite the continued viability of all of the plaintiff's discrimination claims against Cardinal Health, Title VII and the ADEA have no applicability to the individual defendants, Lowery and Coney, because those individuals are not covered "employers" under the statutes.  The plaintiff appears to agree that Lowery and Coney are not employers within the meaning of the federal statutes; however, he still maintains that his conspiracy charges against those individuals is still viable.[5]  <u>See</u> Pl. Response to Def. Motion for Summ. Judgment, at 4.

The Fifth Circuit Court of Appeals has consistently held that Title VII provides no basis for individual liability for employees. See <u>Smith v. Amedisys, Inc.</u>, 298 F.3d 434, 448-49 (5th Cir. 2002);

---

[5] The conspiracy charges (both federal and state) will be addressed later in this opinion.

Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999); Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994). Similarly, individuals also cannot be held liable under the ADEA. See Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996). Thus, all Title VII and ADEA claims alleged against the individual defendants, Lowery and Coney, will be dismissed with prejudice.

**III.  Windham's Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986**

42 U.S.C. § 1985 provides the federal statutory vehicle through which a plaintiff may pursue remedy for the conspiratorial violation of his or her constitutionally guaranteed rights.  A claim under this statute contains the following elements:

> 1) the defendants conspired
> 2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and
> 3) one or more of the conspirators committed some act in furtherance of the conspiracy whereby
> 4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and
> 5) the action of the conspirators is motivated by a racial animus.

Wong v. Stripling, 881 F.2d 200, 202-03 (5th Cir. 1989).  A claim under § 1985 must be pled with particularity; consequently, mere notice pleading is insufficient.  See Holdiness v. Stroud, 808 F.2d 417, 424 (5th Cir. 1987); Green v. State Bar of Texas, 27 F.3d 1083, 1089 (5th Cir. 1994); Buster v. Dallas County Hosp. Dist.,

Civ.A. 3:97cv172, 1998 WL 460284, at *7 (N.D. Tex. July 24, 1998).

In his complaint, Windham simply states that the defendants "engaged in a conspiracy to violate his Civil Rights in violation of the provision of 42 U.S.C. § 1985 and alleges violations of 42 U.S.C. § 1986." <u>See</u> Compl., ¶1. Windham fails to plead his § 1985 claim with particularity, inasmuch as his complaint does not list out the required specific elements of his federal conspiracy claim. Moreover, the Fifth Circuit has never held that a § 1985 action may lie where <u>racial</u> animus is not the motivating factor for the conspiracy. <u>See Deubert v. Gulf Fed. Sav. Bank</u>, 820 F.2d 754 (5th Cir. 1987); <u>Newberry v. East Tex. State Univ.</u>, 161 F.3d 276, 281 n.2 (5th Cir. 1998). Windham alleges only that he was discriminated against on the basis of his gender and his age. Thus, he has failed to state a viable claim under § 1985.[6]

---

[6] Furthermore, the United States Supreme Court has held that § 1985 cannot be used to remedy wrongs stemming from a claim which falls under Title VII's purview. <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 378 (1979). The reasoning set forth for the decision in <u>Novotny</u>, that Title VII's comprehensive remedial framework should not be circumvented by resorting to the broader and less procedurally complicated conspiracy statute, would seem to apply with equal force to a claim falling under the ADEA. <u>See Tranello v. Frey</u>, 758 F. Supp. 841, 850 n.3 (W.D.N.Y. 1991) ("The ADEA . . . provides the exclusive remedy for age discrimination claims.") (citing <u>Novotny</u>); <u>LaBlanc v. City of Stamford</u>, 1988 WL 148431, at *1 (D. Conn. 1988) (holding that because the ADEA provides a comprehensive remedial framework similar to Title VII, <u>Novotny</u> precludes review of pure age discrimination claims under § 1985); <u>Dickerson v. City Bank & Trust Co.</u>, 575 F. Supp. 872, 876 n.1 (D.C. Kan. 1983) (noting that <u>Novotny</u> may apply to require dismissal of § 1985 claims based upon age discrimination). Unsurprisingly, the Fifth Circuit has not reached such a decision because it has yet to hold a non-race based conspiracy to be

Inasmuch as Windham's claim under 42 U.S.C. § 1986 relies upon an initial finding of a claim under § 1985,[7] all of his federal conspiracy claims will be dismissed.

## IV. Law Breach of Contract / Tortious Interference with Contract

Windham asserts a breach of contract claim and a tortious interference with contract claim against the defendants on the basis of state law.  See Compl., ¶ 30.  It is unquestioned that the plaintiff was employed at-will by Cardinal Health and, thus under normal circumstances, his employment could have been terminated for almost any reason at all.  Solomon v. Walgreen, 975 F.2d 1086, 1089 (5th Cir. 1992).  The defendants assert that because Windham was an at-will employee, there was essentially no employment contract that could have been breached or tortiously interfered with.

The plaintiff submits, however, that his claim should fall under Mississippi's public policy exception to the at-will doctrine as recognized in McArn v. Allied Bruce Terminix, 626 So. 2d 603 (Miss. 1993).  McArn acknowledged only two very narrow public policy exceptions to the at-will doctrine, recognizing a cause of

---

actionable under § 1985; however, the reasoning utilized by the cited district court opinions from other circuits is sound and would independently justify dismissing Windham's federal conspiracy claims.

[7] See Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989) (citing Hamilton v. Chaffin, 506 F.2d 904, 913-14 (5th Cir. 1975); Miss. Women's Medical Clinic v. McMillan, 866 F.2d 788, 795 (5th Cir. 1989) ("[J]urisdiction under § 1986 depends on finding a claim under § 1985 . . . .").

action for employees who were discharged for either: (1) refusing to participate in illegal acts requested by the employer; or (2) reporting illegal acts of the employer.  Id. at 607.  Windham attempts to extend McArn's holding too far; therefore, his state law contract claims must be dismissed.

## V.   Intentional Infliction of Emotional Distress

The plaintiff alleges that the harassing conduct by his co-workers and his supervisor constitutes intentional infliction of emotional distress ("IIED") in violation of state law.  In order to support a claim for IIED under Mississippi law,  "the alleged conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.  It must be regarded as atrocious and utterly intolerable in a civilized community."  Diamondhead Country Club and Property Owners Association, Inc. v. Montoy, 820 So.2d 676, 684 (Miss. Ct. App. 2000).  "It is the nature of the act itself, as opposed to the consequences which gives impetus to legal redress."  Id.  Where the conduct is sufficiently outrageous, i.e., "willful, wanton, malicious or intentional[ly] wrong," no physical injury must be shown under Mississippi law to recover damages.  Whitten v. Cox, 799 So.2d 1, 11 (Miss. 2001).

Courts within this circuit have consistently held that a claim for IIED will not ordinarily lie for mere employment disputes. See, e.g., Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d

31, 33 (5th Cir. 1992) (holding that allegations of "unfair criticism of job performance, poor evaluations, demands that [the plaintiff] quit or face the threat of defendant fabricating a case against her to justify termination" did not state a valid IIED claim).

Windham maintains that the conduct complained of in this case, however, was sufficiently outrageous to take his claim outside the boundaries of a normal employment dispute. See Pl. Supp. Memo. in Response to Def. Motion for Summ. Judgment, at 10.  To analyze this claim, a review of the facts of Wilson v. Monarch Paper Company, 939 F.2d 1138 (5th Cir. 1991), may be helpful.  In Wilson, Richard Wilson, alleging both an ADEA and an IIED claim against his employer, claimed that he had been ostracized by the company's president and other members of management, had his duties and some benefits stripped from him and had been harassed as being "old". Id. at 1143.  The district court allowed both the ADEA and the IIED claims to proceed to the jury, which returned a verdict for the plaintiff.  On appeal, the Fifth Circuit Court of Appeals found that most of the conduct committed against Wilson was within the bounds of a normal employment dispute.  However, the court found that some of the conduct against Wilson had been so severe and outrageous as to take that case beyond the norm of employment disputes.  Such conduct included forcing Wilson, who had a college degree, thirty years of experience in the field and who had

−21−

previously worked as the Vice President of the company, to work as a "supervisor" in a warehouse where he performed mainly janitorial duties.  Id. at 1145.  The Fifth Circuit found there was ample support for the plaintiff's IIED claim because "[his employer], unwilling to fire Wilson outright, *intentionally and systematically* set out to humiliate him in the hopes that he would quit."  Id. (emphasis in original).

Windham alleges that Cardinal Health, through Lowery and two co-workers, engaged in a concerted effort to "get rid of him" by ostracizing him from his other co-workers, failing to give him adequate training that was promised to him, continually ridiculing him about any mistakes he made, commenting about his age and telling him that he smelled "like shit" and was "stupid".  See Pl. Supp. Memo. in Response to Def. Motion for Summ. Judgment, at 10-11.  While the facts presented by the plaintiff in the instant case are perhaps not as extreme as those demonstrated in Wilson, at this stage of the litigation, Windham has sufficiently supported his allegations of an intentional and systematic attempt to humiliate him to maintain his IIED claim against the defendants.

## VI.  Invasion of Privacy

Windham alleges that on August 8, 2003, Coney and Johnson "left the pharmacy and went to the security room which houses the in-house camera system and watched [the plaintiff] fill narcotic prescriptions."  Depo. of Windham, 86-87.  He submits in his

complaint that those actions constituted an invasion of his privacy in violation of state law.   See Compl., ¶ 40.   The defendants contend that the plaintiff's claim, however, is barred by the applicable statute of limitations inasmuch as Windham filed his suit more than one year after the alleged injury occurred.   See Young v. Jackson, 572 So. 2d 378, 382 (Miss. 1990) (recognizing a one-year statute of limitations for invasion of privacy claims).

Windham counters this argument by asserting that the limitations period should be equitably tolled during the time that he was seeking to remedy the matter through Dr. Hopson, the hospital's Chief of Staff.   He complains that Dr. Hopson failed to redress the situation and that "Cardinal Health should have taken some prompt action to address [the violation of the hospital's policy regarding the use of in-house surveillance] with Coney and Johnson, but again, in essence 'did nothing.'" Pl. Supp. Memo. in Response to Def. Motion for Summ. Judgment, at 11.

"The theory of equitable tolling provides that where a plaintiff's delay in filing is caused by the defendant's misrepresentation, the statute is tolled." Smith v. Franklin Custodial Funds, Inc., 726 So. 2d 144, 149 (Miss. 1998) (citing Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 810 (5th Cir. 1991) (emphasis added)).   Dr. Hopson and River Region are not defendants to this action and did not function as Windham's employer.   Windham has failed to demonstrate how the defendants'

misrepresentations, if any, caused his delay in filing the instant claim.   Therefore, he cannot rely upon his claim that he was seeking redress through River Region to equitably toll the statute of limitations in regard to his invasion of privacy claim.   As such, the plaintiff's claim on this issue is time-barred and will be dismissed.

**VII.   Civil Conspiracy Under State Law**

Along with his federal conspiracy claims, Windham also submits a conspiracy count against the defendants based upon Mississippi law. See Compl., ¶¶ 6, 40.  Under Mississippi law, a conspiracy is defined as "a combination of persons for the purposes of accomplishing an unlawful purpose or a lawful purpose unlawfully." Smith v. St. Regis Corp., 850 F. Supp. 1296, 1323 (S.D. Miss. 1994) (citing Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985).  The defendants claim that the plaintiff has failed to offer sufficient proof that there ever was an agreement by the defendants to commit an illegal act to maintain his civil conspiracy claim.  See Def. Memo. in Support of Motion for Summ. Judgment, at 24; Crowe v. Lucas, 595 F.2d 985 (5th Cir. 1979) ("In order to establish a cause of action based on conspiracy, plaintiff must show that the defendants agreed to commit an illegal act.").

With regard to the defendants' assertion that he lacked any evidentiary support of an agreement for his conspiracy claim, the plaintiff counters merely by referring, in general, to the

affidavits from Ms. Moses and Mr. Mayer.  Neither affiant testifies
that she or he had personal knowledge of any agreement between the
defendants.  Their statements indicate only that both Lowery and
Coney were abusive towards Windham, not that they had formulated
some plan together to unlawfully harass him.  Therefore, the
plaintiff has failed to present enough evidence to generate an
issue of material fact in regard to his state civil conspiracy
claim and that count will be dismissed.

### CONCLUSION

Based on the reasoning and authority set forth above, the
Court finds that the defendants' Motion for Summary Judgment should
be GRANTED in part and DENIED in part.

IT IS HEREBY ORDERED that the defendants' Motion for Summary
Judgment [**docket entry no. 19**] is **GRANTED** as to the individual
defendants, Sharon Coney and Rachel Lowery, as to all of the
plaintiff's Title VII and ADEA claims against them, but is **DENIED**
as to all of the Title VII and ADEA claims against Cardinal Health,
Inc. and Cardinal Health Staffing;

IT IS ALSO ORDERED that the defendants' Motion for Summary
Judgment is **GRANTED** as to the plaintiff's federal conspiracy claims
under 42 U.S.C. §§ 1985 and 1986, the state law claims for breach
of contract and tortious interference with contract, the invasion
of privacy claim, and the state civil conspiracy claim, but is

-25-

**DENIED** as to the plaintiff's intentional infliction of emotional distress claim.

SO ORDERED, this the __9th__ day of January, 2006.


                                       ___s/ David Bramlette___

                                       UNITED STATES DISTRICT JUDGE